UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Robert Wendt,

      Plaintiff,

                   **Hon. Hugh B. Scott**

     v.               04CV995A

                   **Report
                   and
COMMISSIONER OF SOCIAL       Recommendation**
SECURITY[1],

      Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 6, 8, 9, and 11).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Robert Wendt ("Wendt" or "plaintiff"), filed an application for disability insurance benefits on October 4, 2002. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

---

[1]For convenience, defendant will be identified by the official title only. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

considered the case <u>de novo</u> and concluded, in a written decision dated May 12, 2004 , that the plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision became the final decision of the Commissioner on October 28, 2004, when the Appeals Council denied plaintiff's request for review.

Plaintiff subsequently commenced this action (Docket No. 1).  The parties moved for judgment on the pleadings.

## **FACTUAL BACKGROUND**[2]

The plaintiff alleges that he is disabled since May 21, 2002 as a result of a combination of impairments including vertigo, dizziness, visual disturbances, bilateral upper extremity numbness and cervical disc disease. (R. 91).  Wendt was 49 years old at the time of the administrative hearing.  His past work was primarily that of a bus driver. (R. 20).  On August 25, 2000, Wendt fell from a ladder as he was descending from a roof. He was confused and disoriented. This episode was described as nearly syncopal inasmuch as Wendt apparently claimed that he almost lost consciousness.  The plaintiff was seen on August 25, 2000 by Dr. Steven Stone.  In a report dated October 24, 2000, Dr. Stone determined that further neurological testing was required but directed that the plaintiff was "to be off bus driving" for approximately one month. (R. 255).

Wendt was seen by Dr. Eugene J. Gosy on December 19, 2000 for evaluation of pain in his upper extremities and symptoms of encephalopathy. (R. 158).  Dr. Gosy concluded that Wendt most likely suffered from carpal tunnel syndrome but needed to rule out cervical spinal

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

stenosis; benign positional vertigo and dysthymia (a form of depression). (R. 158-159). Dr. Gosy determined that Wendt should not return to work for "approximately one month." (R. 159). A spinal MRI performed on December 21, 2000 revealed cervical spondylosis, disc degeneration, osteophytes C3-4 through C7-T1 with facet degenerative changes leading to narrowing of the central spinal canal as well as bilateral foraminal narrowing worst at C5-6 and C7-T1. A C7-T1 posterior protrusion resulted in moderate to severe spinal stenosis. (R. 157).

Dr. Gosy examined Wendt again by on January 18, 2001. At that time, Dr. Gosy noted that the plaintiff was afflicted with cervical spine stenosis and possible carpel tunnel syndrome. He also noted that the plaintiff suffered from psoriasis and anxiety. He ordered an EMG nerve conduction study and directed that Wendt was to remain off work as a bus driver. (R. 155). The EMG study confirmed chronic C5 radiculopathy. (R. 153). The plaintiff was given epidural steroid injections. (R. 151-152). Dr. Gosy cleared Wendt to return to work May 22, 2001. (R. 149).

Wendt was next seen by Dr. Gosy on August 1, 2001. Dr. Gosy noted that the plaintiff continued to be afflicted by cervical radiculopathy. He also noted that Wendt "recently has manifested pain along the spinal axis" and that Wendt "has had several phone contacts when the patient experienced anxiety attacks." (R. 146). Dr. Gosy prescribed Effexor and continued his Naprosyn for pain. (R. 146).

On May 21, 2002, Wendt was seen at the DeGraff Memorial Hospital emergency room after losing consciousness at home. (R. 185-190). A CAT scan was negative. (R. 214). Wendt declined to be admitted and was directed to follow-up with his physician. He was directed not to drive until cleared by his doctor. (R. 188). The plaintiff was seen by Dr. Stone on May 29, 2002.

Dr. Stone started Wendt on Dilantin and referred him for further neurological evaluation. (R. 214). An MRI of the plaintiff's spine on July 5, 2002 revealed stenosis extending C3-4 through C6-7 with posterior distortion of the spinal cord at multiple levels due to broad based disc herniations worst at C3-4 and diffuse facet arthropathy. (R. 192).

In a report dated June 24, 2002, Dr. Marc Frost, a neurologist, concluded that Wendt suffered from significant cervical spinal stenosis and a syncopal seizure. Dr. Frost recommended that his spinal stenosis be reviewed by a surgeon for possible discectomy and that further testing by done as to Wendt's loss of consciousness. Dr. Frost stated that if all testing had been normal, he would not even have Wendt treated with seizure medications. However, because of "subtle focal abnormalities on MRI scan," Dr. Frost continued Wendt on Dilantin and ordered a PET scan to look for more specific abnormalities. (R. 194). Dr. Frost advised Wendt that New York State law requires that he not drive for at least 6 months following his seizure. Thus, Dr. Frost provided a note keeping Wendt off work as a bus driver for that period. (R. 194-195).

Wendt was seen by Dr. Young Yu, a neurologist, on July 31, 2002. Upon examination, Dr. Yu concluded that Wendt suffered from multiple level cervical disc herniation, cervical spondylosis with osteophytes, and moderate to severe cervical spinal canal stenosis with myelopathy. (R. 292). He ordered a complete cervical myelogram and post myelogram CT scan. (R. 293). The results of these tests confirmed the existence of significant cervical disc herniation at multiple levels. Dr. Yu concluded that surgery was recommended. (R. 289). The plaintiff underwent surgery on October 7, 2002 including anterior cervical disectomy at various levels and the insertion of Rabea titanium cages and Grafton bone putty. (R. 199). Dr. Yu concluded that the plaintiff was disabled as a bus driver on a permanent basis. (R. 280). Dr. Yu

did not state that Wendt was disabled from performing all work, but did suggest that "in spite of his age, he may need vocational retraining." (R. 281).

Wendt continued to experience pain after his surgery. He was seen by Dr. Malti Patel on December 17, 2003 for complaints of constant neck pain. Dr. Patel noted that the plaintiff's symptoms were "worsening" and ordered further EMG and nerve conduction studies. (R. 308). The January 30, 2004 EMG revealed chronic left C5-6 radiculopathy; left ulnar neuropathy; "mild conduction velocity slowing at the elbow segment on the ulnar motor studies recording abductor digiti minimi on the left side." (R. 305). A February 18, 2004 report from Dr. Patel states that Wendt has a static neurologic status but wanted to conduct further tests "to rule out the possibility of demyelinating disorder. (R. 303).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity.  Washington, supra, 37 F.3d at 1442.

In the instant case, the ALJ found that Wendt did suffer a severe impairment of his spine, but that he did not meet the Appendix 1 listings.  The ALJ further determined that Wendt could not return to his previous work as a bus driver.  However, the ALJ concluded that the plaintiff's allegations of complete disability were not credible and that he could perform "a significant number of jobs" such as work as a cashier, office worker, assembler and security guard. (R. 25).

The plaintiff argues that the ALJ failed to properly evaluate his residual functional capacity. The ALJ determined that Wendt was capable of performing light work; lifting 10 pounds frequently, and 20 pounds occasionally where he can alternate between sitting and standing. (R. 23). In doing so, the ALJ relied upon the fact that none of the plaintiff's physician's stated that he was permanently and completely disabled. (R. 23). Further, the ALJ noted that Dr. Yu stated that he could not return to work as a bus driver but offered no opinion regarding the plaintiff's ability to perform other work. The ALJ concluded that "this suggests that the neurosurgeon did not consider the claimant to be completely disabled." (R. 23). Such a conclusion by the ALJ is completely speculative. The fact that Dr. Yu, or any of the other physicians, did not state that Wendt was completely disabled is not affirmative evidence that he could perform substantial gainful activity at a light or sedentary level as defined under the applicable regulation. Moreover, the ALJ does not point to any clinical evidence in the record as serving as the basis for his conclusion as to the plaintiff's the residual functional capacity.

The plaintiff also argues that the ALJ erred by failing to consider the substantial medical evidence reflecting that Wendt has limitations using his hands for activities such as handling, fingering, feeling, gripping and grasping (R. 158-159; 167; 307) and his restrictions related to his dizziness and vertigo. The ALJ determined that the plaintiff would not have any manipulative limitations or other limitations that would prevent him from performing light work that permits him to alternate between sitting and standing. (R. 24). The Commissioner argues that this conclusion is supported by Dr. Yu's post-surgery notes (R. 280-281) and Dr. Patel's reports (R. 194, 292 and 303). However, the reports from Dr. Yu do not support such a finding. Although Dr. Yu stated in his January 14, 2003 report that the plaintiff's biceps, triceps and grip strength

8

had "significantly improved" (R. 281), this does not reflect that the plaintiff no longer had any limitations in this regard. Also, in his June 12, 2003 report, Dr. Yu stated that the plaintiff's upper extremities were "somewhat limited at the shoulder joint", and that the plaintiff's biceps, biceps and grip strength was only "fair." (R. 280). Further, a report by Dr. Patel reflects that the plaintiff had been dropping objects and experiencing cramping in his hands which need to be evaluated by a surgeon. (R. 307).

The plaintiff also argues that the ALJ erred in finding that his testimony as to his limitations was not credible. The ALJ concluded that Wendt's allegations "are not credible for the reasons set for in the body of the decision." (R. 25). However, at no other place in the ALJ's decision does he address the plaintiff's credibility. When discounting the testimony of a claimant as not credible, the ALJ is required to make specific findings discussion of the basis for such a determination. See Donato v. Secretary of Health and Human Services, 721 F.2d 414, 418-19 (2d Cir.1983)(ALJ required to carefully examine the claimant's descriptions of symptoms, resolve inconsistencies, and logically explain the individual's ability to work. A proper consideration of credibility should have involved considering factors such as evidence of a good work record, which this Court views as entitling a claimant to "substantial credibility.") citing Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) (evidence of good work record is evidence of credibility).

Based on the above, the ALJ's determination in this case is not supported by substantial evidence in the record. This matter should be remanded back for further administrative proceedings, including (1) the development of the record and a proper assessment as to the plaintiff's residual functional capacity; (2) a proper assessment of the plaintiff's credibility as to

testimony relating to any pain and limitations resulting from his impairment.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be vacated and this matter be REMANDED for further administrative proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott<br>United States Magistrate Judge<br>Western District of New York

Buffalo, New York
January 8, 2007